UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARIE ROMMAGE,                          :
                                        :
                    Plaintiff           :
                                        :
        -against-                       :           **OPINION AND  ORDER**
                                        :           08-cv-836 (DLI)(ALC)
MTA LONG ISLAND RAIL ROAD,              :
                                        :
                    Defendant.          :
--------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

In this discrimination case, plaintiff Marie Rommage alleges in her complaint that

defendant MTA Long Island Rail Road illegally terminated her from her position because of her

race, gender and age and in retaliation for making an internal complaint and filing an EEOC

complaint.  Plaintiff claims violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

1981, and Section 8-107(a) of the Administrative Code of the City of New York.  Defendant

moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For

the reasons set forth below, defendant's motion is granted in its entirety.

**I.      Background**

Plaintiff  is  an  African-American  female  who  was  employed  by  defendant  for

approximately eight years.  Plaintiff began her employment for defendant in July 1999 at the age

of 19 as an assistant conductor, and in March 2001 became a block operator.  (Declaration of

Kevin McCaffrey, dated June 15, 2009 ("McCaffrey Decl.") Ex. B, at 75.)  A block operator is

responsible for safely routing trains.  (*Id.* at 66.)  In 2003, plaintiff became qualified as a Penn

Station Central Control ("PSCC") console operator, which is responsible for safely routing trains

in and out of Penn Station.  (*Id.* at 72.)  The block operator and PSCC console operator positions

are essentially the same, although a PSCC console operator has a higher level of authority to

route trains.  (Def. 56.1 Stmt. ¶¶ 3, 5, 6; Pl. 56.1 Stmt. ¶¶ 3, 5, 6.)  The block operator and PSCC console operator positions are both in the Transportation Department.

A.     Implementation of Discipline at the Long Island Rail Road

The Transportation Department uses a discipline process designed to alert employees to their errors and deficiencies and provide them with an opportunity to improve their performance. (Def. 56.1 Stmt. ¶ 26; Pl. 56.1 Stmt. ¶ 26.)  Violations of the Rules of the Operating Department ("operating rules") may result in the imposition of discipline. For example, if an employee misroutes a train, which is considered a serious problem that can result in injury or death, the misrouting is reported to the trial office for the appropriate sanction.  (Def. 56.1 Stmt. ¶¶ 9-10; Pl. 56.1 Stmt. ¶¶ 9-10.)  The trial office is responsible for administering discipline to employees of the Transportation Department for violations of the operating rules.  (Def. 56.1 Stmt. ¶ 20.)

The trial office may issue to the employee a letter of caution or a verbal warning, neither of which result in a sanction.  (Def. 56.1 Stmt. ¶¶ 31-32.)[1]  If a more severe penalty is warranted, the trial office will issue a trial notice, which is resolved in accordance with the Collective Bargaining Agreement between the MTA LIRR and plaintiff's union.   An employee may negotiate with the trial office to receive a trial waiver, in which an employee will admit to the violation of the operating rules of the department for an agreed upon sanction.  (Def. 56.1 Stmt. ¶ 33.)  If the employee does not agree to the trial waiver, a trial before a transportation manager proceeds, and the area superintendent will determine if there is sufficient evidence to sustain the charges and what sanction is appropriate.  (Def. 56.1 Stmt. ¶¶ 35-36.) The employee can appeal to the Chief Transportation Officer ("CTO"), and can appeal the CTO's decision to the Director

---

[1] Plaintiff disputes paragraphs 31-33, 36 of defendant's 56.1 statement, which describe the implementation of discipline.   However, the only evidence put forth to rebut defendant's explanation is the disciplinary history of other employees, which does not bear on defendant's explanation of the possible disciplinary outcomes.

of Labor Relations. After exhausting internal appeals, the employee has a right to seek a hearing before a neutral arbitrator. (Def. 56.1 Stmt. ¶¶ 37-39; Pl. 56.1 Stmt. ¶¶ 37-39.)

### B. Plaintiff's Discipline, Last Chance Agreement and Termination

#### 1. Plaintiff's History of Discipline

In March 2001, September 2001, and January 2002, plaintiff received a letter of caution for failing to report to cover the first train, a verbal warning for improperly moving a train, and a verbal warning for requiring intervention to avoid the misrouting of a train, respectively. (Def. 56.1 Stmt. ¶¶ 40-42; Pl. 56.1 Stmt. ¶¶ 40-42.) In October 2002, plaintiff received a 30-day suspension and also was required to reassess her Amtrak qualifications for failing to apply a blocking device in violation of Rule 803 of Amtrak's operating rules. (Def. 56.1 Stmt. ¶ 43; Pl. 56.1 Stmt. ¶ 43; Declaration of Margaret McIntyre, dated July 20, 2009 ("McIntyre Decl.") Ex. 1.)[2] In 2003, plaintiff received a 45-day suspension for admitted abuse of sick leave, a verbal warning for failure to have a timetable or copy of the operating rules, a letter of caution for wearing sandals in violation of a safety rule, and a 60-day suspension for incorrectly routing a train in violation of Rule 613. (Def. 56.1 Stmt. ¶¶ 45-48; Pl. 56.1 Stmt. ¶¶ 45-48.) In November 2004, plaintiff received a letter of caution for violating the LIRR absence policy. (Def. 56.1 Stmt. ¶ 49; Pl. 56.1 Stmt. ¶ 49.)

#### 2. Last Chance Agreement

From July 26 to July 29, 2005, plaintiff was cited for violating Rule 812 for failure to properly relay a notification to the appropriate console operator, using a cell phone in violation of company rules, and leaving work without permission. (Def. 56.1 Stmt. ¶¶ 52, 55, 57; Pl. 56.1

---

[2] Defendant contends that unauthorized removal of a blocking device is one of the most serious offenses an operator can commit and justifies accelerated discipline. (Def. 56.1 Stmt. ¶ 24.) Plaintiff denies this statement, and contends that the most serious offenses are those requiring immediate removal from service. (Pl. 56.1 Stmt. ¶ 24.) Nevertheless, plaintiff does not deny that violations involving blocking devices are more serious offenses than other violations.

Stmt. ¶¶ 52, 55, 57.)  In response to these citations, on September 12, 2005, plaintiff negotiated a settlement of the charges and signed a Last Chance Agreement, which is an agreement where the employee acknowledges that any similar future violations may result in her termination.  (Def. 56.1 Stmt. ¶ 59; Pl. 56.1 Stmt. ¶ 59; McIntyre Decl. Ex. 1.)  In the agreement, she accepted a 70-day suspension.  (McIntyre Decl. Ex. 1.)

### 3.  Conduct Subsequent to the Last Chance Agreement

On February 8, 2006, plaintiff received a verbal warning from her supervisor for improperly routing two trains onto one track.  (McCaffrey Decl. Ex. U; *see also* Def. 56.1 Stmt. ¶ 61; Pl. 56.1 Stmt. ¶ 61.)  On October 3, 2006, plaintiff received a verbal warning for improperly rerouting two trains.  (McCaffrey Decl. Ex. W.)  Defendant provided an email regarding this incident.  (*See id*.)  Plaintiff does not recall this incident, but provides no evidence to rebut the defendant's contemporaneous document.  (*See* Pl. 56.1 Stmt. ¶ 63.)[3]

### 4.  Withdrawn Charges

On January 3, 2007, plaintiff was issued a notice for violating Rule 812, but the charge was withdrawn.  (Def. 56.1 Stmt. ¶¶ 81-82; Pl. 56.1 Stmt. ¶¶ 81-82.)  On January 10, 2007, plaintiff was issued a trial notice for violation of Rule 812 and of the Last Chance Agreement in connection with her failure to communicate information to her relief employee.  (Def. 56.1 Stmt. ¶ 83; Pl. 56.1 Stmt. ¶ 83.)  On February 6, 2007, the superintendent reviewing officer decided that she would be dismissed, but upon plaintiff's appeal, the CTO concluded that the charges were not fully supported.  (Def. 56.1 Stmt. ¶¶ 85-86; Pl. 56.1 Stmt. ¶¶ 85-86.)  The charges were

---

[3] Defendant also asserts that on December 1, 2006, plaintiff received a verbal caution for being seven minutes late on one occasion and twenty-two minutes late on another occasion. (McCaffrey Decl. Ex. X.)  Plaintiff does not recall the December incident.  (Pl. 56.1 Stmt. ¶ 64.)  The contemporaneous document defendant submits regarding the December incident is a memorandum addressed to plaintiff describing her violation, and it leaves a place for plaintiff's signature to acknowledge receipt of the document.  (McCaffrey Decl. Ex. X.)  Drawing all inferences in favor of plaintiff, because the document is unsigned, the court will not consider it.

withdrawn and plaintiff was paid for the time of her absence.  (Def. 56.1 Stmt. ¶ 86; Pl. 56.1 Stmt. ¶ 86; *see also* McCaffrey Decl. Ex. HH.)

     5.    <u>Plaintiff's Termination</u>

On August 24, 2007, plaintiff misrouted a train onto the wrong track in violation of Rule 812 and permitted the train to traverse an interlocking switch that had a rusty condition without receiving the proper authorizations in violation of Rule 608.  (Def. 56.1 Stmt. ¶ 88; Pl. 56.1 Stmt. ¶ 88.)  On August 28, 2007, plaintiff was issued a trial notice, alleging a violation of the rules and of the Last Chance Agreement.  (Def. 56.1 Stmt. ¶ 92; Pl. 56.1 Stmt. ¶ 92.)  At the trial, various witnesses, including plaintiff, testified.  (Def. 56.1 Stmt. ¶¶ 93-110; Pl. 56.1 Stmt. ¶¶ 93-110.)  The transcript of the trial and exhibits were sent to General Superintendent – Transportation Rob Brooks, the designated reviewing officer.  (Def. 56.1 Stmt. ¶ 112; Pl. 56.1 Stmt. ¶ 112.)  Mr. Brooks wrote to Ms. Rommage informing her that dismissal was the appropriate discipline.  (McCaffrey Decl. Ex. LL.)

Plaintiff appealed the dismissal to the CTO, who denied the appeal.  (Def. 56.1 Stmt. ¶ 116; Pl. 56.1 Stmt. ¶ 116.)  Plaintiff then appealed to Labor Relations, and an appeal hearing was held on February 28, 2008.  (Def. 56.1 Stmt. ¶¶ 117-18; Pl. 56.1 Stmt. ¶¶ 117-18.)  There was no argument made at the hearing that plaintiff was subjected to discipline based on impermissible considerations or that she was treated differently on the basis of race, gender or age.  (Def. 56.1 Stmt. ¶ 120; Pl. 56.1 Stmt. ¶ 120.)  The Director of Labor Relations determined that the disciplinary action was supported by the evidence and that the discipline imposed was appropriate. (Def. 56.1 Stmt. ¶ 121; Pl. 56.1 Stmt. ¶ 121.)

6.     Plaintiff's Appeal to the Public Law Board

Plaintiff appealed to the Public Law Board ("PLB"), which examines the record of the department trial to determine whether it is supported by sufficient evidence and was held in accordance with the Collective Bargaining Agreement.  (Def. 56.1 Stmt. ¶ 124; Pl. 56.1 Stmt. ¶ 124.)  Before the hearing, the parties are entitled to submit their arguments and any evidence in support of their arguments.  Plaintiff was also present at the hearing and made an argument in her defense.  (Def. 56.1 Stmt. ¶¶ 128-31; Pl. 56.1 Stmt. ¶¶ 128-31.)  Plaintiff did not present the argument, either in her submission or in her statement at the hearing, that she was either subjected to discipline or was treated differently on the basis of race, gender or age.  (Def. 56.1 Stmt. ¶¶ 129-32; Pl. 56.1 Stmt. ¶¶ 129-32.)

On November 21, 2008, the PLB issued a written decision sustaining the LIRR's right to terminate plaintiff and concluding that plaintiff failed to present any proof that she was coerced into signing the Last Chance Agreement, and that "she was extremely fortunate that [her union] was able to convince [the defendant] to offer her a Last Chance Agreement in view of her poor work history."  (McCaffrey Decl. Ex. QQ.)  The PLB decision further stated that it was clear that the LIRR had "attempted to use progressive discipline to correct the [plaintiff's] behavior to no avail."  (McCaffrey Decl. Ex. QQ; Def. 56.1 Stmt. ¶ 133; Pl. 56.1 Stmt. ¶ 133.)

C.     Plaintiff's Complaints About Rob Free

Prior to plaintiff's termination, on December 27, 2006, during a service disruption at Penn Station, one of plaintiff's superiors, Rob Free, broadcasted requests over a line audible to console operators.  (Def. 56.1 Stmt. ¶ 69; Pl. 56.1 Stmt. ¶ 69.)  Plaintiff did not implement the requests.  (*See* Def. 56.1 Stmt. ¶ 70; Pl. 56.1 Stmt. ¶ 70.)  When Mr. Free discovered that his requests had been denied, he stated "You guys are going to regret it when I come up there, I'll

say that much, man. You guys are in for a rude awakening." (Def. 56.1 Stmt. ¶ 71; Pl. 56.1 Stmt. ¶ 71.)

Plaintiff wrote a letter of complaint, dated December 28, 2006, with regard to Mr. Free's comments, alleging that the comments were directed at her and were inappropriate and created a hostile work environment. (Def. 56.1 Stmt. ¶ 73; Pl. 56.1 Stmt. ¶ 73.) Plaintiff's letter did not explicitly state that she felt that she was being discriminated against on the basis of gender or race. (McCaffrey Ex. AA.) In response to the letter, an investigation was conducted by Antonia Gelia, a Supervisor of Train Movement. (Def. 56.1 Stmt. ¶ 76; Pl. 56.1 Stmt. ¶ 76.) Ms. Gelia wrote a memorandum, dated December 29, 2006, to J. V. Navarro, Superintendant of PSCC, stating that she met with plaintiff to discuss the claims and concluded that plaintiff's fear of termination was driving her complaint and that the complaint was "specious and lacks genuine value." (McCaffrey Decl. Ex. Z.) Plaintiff claims that Ms. Gelia, along with two other supervisors, berated her for writing the letter. (Pl. 56.1 Stmt. ¶ 77.)

On January 11, 2007, plaintiff contacted LIRR's EEO Officer at LIRR Diversity Management regarding the incident involving Mr. Free. (Def. 56.1 Stmt. ¶ 134; Pl. 56.1 Stmt. ¶ 134.) The EEO Officer advised plaintiff that her complaint did not involve an EEO matter. (Def. 56.1 Stmt. ¶ 138; Pl. 56.1 Stmt. ¶ 138.) On May 9, 2007, plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission. (Def. 56.1 Stmt. ¶ 139; Pl. 56.1 Stmt. ¶ 139.) In the EEOC complaint, plaintiff alleged that Mr. Free's behavior was motivated by race and gender animus. She also complained that she was being disciplined, and was terminated, based on discrimination and retaliation. (McCaffrey Decl. Ex. RR.) On September 25, 2007, plaintiff sought a Right to Sue letter from the EEOC. (Def. 56.1 Stmt. ¶ 142; Pl. 56.1 Stmt. ¶ 142.)

D.     <u>Plaintiff's Allegations</u>

Plaintiff alleges that the discipline imposed that led to the Last Chance Agreement and the October 2007 termination resulted from discrimination against her on the basis of her race and gender.[4]  Plaintiff also alleges that discipline was imposed in retaliation for the internal complaint she submitted about Mr. Free and for filing the EEOC complaint.  Defendant disputes plaintiff's allegations and argues that it is entitled to summary judgment because, among other things, there is no evidence in the record to support plaintiff's claim of race and gender discrimination and plaintiff's retaliation claims fail as a matter of law.

**II.**     **Discussion**

A.     <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine

---

[4] Plaintiff had also alleged age discrimination in her complaint, but provided no evidence of age discrimination and did not mention these allegations in her motion papers.  Therefore, plaintiff's age discrimination claim is dismissed.

issue for trial," Fed. R. Civ. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

"The Second Circuit has stated that district courts should be particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Figueroa v. New York Health and Hospitals Corp.*, 500 F. Supp. 2d 224, 227-28 (S.D.N.Y. 2007) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)) (internal quotation marks omitted). Summary judgment in an employment discrimination case may still be warranted, however, if the plaintiff relies "'on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct.'" *Id.* (citation omitted). "This is because, as the Second Circuit has stated, '[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Id.* (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

B.     <u>Exhaustion and Statute of Limitations</u>

Defendant contends that the claim regarding the Last Chance Agreement is time-barred. Defendant also contends that the claim regarding the October 2007 termination has not been exhausted.

1.    Plaintiff's Claim With Respect to Last Chance Agreement is Dismissed
      as Time-Barred

Although plaintiff focuses on her allegations regarding her termination and does not explicitly address a claim regarding the Last Chance Agreement in her motion papers, her complaint asserts that the Last Chance Agreement was the result of discrimination. (*See, e.g.*, Compl. ¶ 32.)  To the extent that plaintiff does assert this claim, it is dismissed as time-barred.  A Title VII claim must be filed with the EEOC within 300 days of the alleged discriminatory act. Plaintiff signed the Last Chance Agreement on September 12, 2005, but did not file her complaint with the EEOC until May 9, 2007.  In her complaint, plaintiff alleges a continuing violation.

"Under Title VII's continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).  "Generally, courts of this circuit look unfavorably upon the continuing violation exception."  *Scroxton v. Town of Southold*, 2010 WL 1223010, at *4 (E.D.N.Y. Mar. 24, 2010) (citing additional cases).

The continuing violation doctrine does not apply to discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002); *see also Sundaram v. Brookhaven Nat. Labs.,* 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006).  Here, like termination or a denial of transfer, the imposition of the Last Chance Agreement was a discreet act.  *See, e.g.*, *Grant v. Pathmark Stores, Inc*., 2009 WL 2263795, at *10 (S.D.N.Y. July 29, 2009) (holding that discipline imposed is a discrete act for the purpose of a Title VII discrimination claim); *Daniels v. Niagara Mohawk Power Corp*., 2007

WL 925759, at *4 (W.D.N.Y. Mar. 26, 2007). Therefore, plaintiff's claim regarding the Last Chance Agreement is dismissed.

2.     <u>Plaintiff's Claim With Respect to October 2007 Termination is Exhausted</u>

Defendant also alleges that plaintiff's claim regarding her October 2007 termination was not properly exhausted. "Jurisdiction exists over Title VII claims only if they have been included in an EEOC charge, or are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (citation and quotation marks omitted); *Terry v. Ashcroft*, 336 F.3d 128, 150-51 (2d Cir. 2003). Here, the EEOC complaint was filed on May 7, 2007. (McCaffrey Decl. Ex. RR.) In August 2007, disciplinary charges were initiated. On September 25, 2007, plaintiff sought a Right to Sue letter from the EEOC. In October 2007, plaintiff was terminated. The EEOC issued plaintiff a Right to Sue letter on November 30, 2007. Because the October 2007 termination was subsequent to the filing of the EEOC complaint, it was not included in the EEOC complaint and therefore must be reasonably related to the claims therein in order to be properly exhausted.

"Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Alfano*, 294 F.3d at 381 (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993)).

Here, plaintiff contends that the October 2007 termination was a further incident of discrimination carried out in precisely the same manner as alleged in the EEOC complaint. (Pl.

Br. 14-15.)  The EEOC complaint alleges instances of unfounded discipline.  (*See* McCaffrey

Decl. Ex. RR.)  Specifically, it alleges that plaintiff was disciplined for misrouting trains and was

terminated because of unjustly implemented discipline that was not consistent with the discipline

imposed on other employees.  (*Id.*)  Plaintiff's claim regarding her October 2007 termination

alleges the same "method of discrimination."  *Boateng v. Apple Health Care, Inc.*, 156 F. Supp.

2d 247, 252 (D. Conn. 2001); *see also Almendral v. New York State Office of Mental Health*, 743

F.2d 963 (2d Cir. 1984) ("[D]efendants' alleged subsequent acts are essentially the same as the

earlier allegedly wrongful conduct contained in the EEOC complaint: namely, alleged

manipulation of the civil service rules for discriminatory reasons in order to appoint someone

other than [plaintiff].");  *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 500 (S.D.N.Y. 2009).

Defendant argues, without citing to any authority, that the errors plaintiff committed that

led to her October 2007 termination occurred at a different location and were referred to the trial

office by a different supervisor.  However, these are insignificant distinctions.  *Boateng*, 156 F.

Supp. 2d at 252 (differences such as the individuals involved are insignificant distinctions).

Therefore, the claim falls within the third theory and is properly exhausted.

C.     Title VII and Section 1981 Gender and Race Discrimination

The remaining gender and race discrimination claim centers around plaintiff's allegation

that her October 2007 dismissal resulted from discrimination.[5]  Under Title VII, it is "an

---

[5] Defendant argues in its motion papers that plaintiff's February 2007 dismissal did not result
from discrimination, apparently believing that this was one of plaintiff's claims.  Plaintiff does
not address this argument, and it appears that she is not asserting that claim.  In particular she
does not address defendant's argument that she did not suffer any adverse employment action, as
the charges underlying the termination were withdrawn and plaintiff was reinstated with back
pay.  Therefore, if plaintiff is indeed asserting this claim, the court finds that, even though under
certain circumstances a plaintiff who was terminated but nevertheless reinstated can demonstrate
an adverse employment action, plaintiff here has conceded that she cannot establish a prima facie
case because there was no adverse employment action.  The claim is therefore dismissed.  *See,
e.g.*, *Almonte v. Coca-Cola Bottling Co.*, 959 F. Supp. 569, 572-73 (D. Conn. 1997) (no adverse

unlawful employment practice for an . . . employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail against a motion for summary judgment, a discrimination plaintiff must satisfy the three-part burden-shifting test laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "In a nutshell, a plaintiff first bears the 'minimal' burden of setting out a *prima facie* discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a 'legitimate, nondiscriminatory reason' for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citations omitted). Employment discrimination claims brought under § 1981 are subject to the same analysis as claims brought under Title VII. *See Choudhury v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 44 (2d Cir. 1984). Accordingly, these claims will be addressed together.

1.     <u>Plaintiff's Claim With Respect to her October 2007 Termination is Dismissed</u>

Plaintiff argues that her termination in October 2007 resulted from discrimination. Defendant contends that plaintiff has not established a prima facie case, and even if she has, she fails to demonstrate that defendant's legitimate, non-discriminatory reasons for plaintiff's termination are a pretext for discrimination. The court assumes for the purposes of this motion that plaintiff has established a prima facie case of discrimination. "'Despite the elaborate process set up in *McDonnell Douglas*, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the

action where reinstated with back pay); *see also Washington v. County of Rockland*, 211 F. Supp. 2d 507, 514 (S.D.N.Y. 2002).

*McDonnell Douglas* analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action.'" *Dorcely v. Wyandanch Union Free School Dist.*, 665 F. Supp. 2d 178 (E.D.N.Y. 2009) (citing additional cases).  Defendant has demonstrated legitimate, nondiscriminatory reasons for plaintiff's termination, specifically her long history of letters of caution, reprimands and other discipline for violations of the operating rules, abuse of sick leave, and other improper actions that culminated in a violation of her Last Chance Agreement. *See, e.g.*, *Eldaghar v. City of New York Dept. of Citywide Admin. Servs.*, 2008 WL 4866042, at *10-11 (S.D.N.Y. Nov. 7, 2008) ("Plaintiff's job performance is a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff."); *Baldwin v. N. Shore Univ. Hosp.*, 470 F. Supp. 2d 225, 230-31 (E.D.N.Y. 2007); *Ford v. Consol. Edison Co. of New York, Inc.*, 2006 WL 538116, at *11 (S.D.N.Y. Mar. 3, 2006).  Therefore, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find race discrimination.

"The ultimate question is whether the employer intentionally discriminated . . . . [I]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *James v. New York Racing Assoc.*, 233 F.3d 149, 156 (2d. Cir. 2000) (internal quotation marks and citation omitted).  To defeat defendant's motion for summary judgment, it is therefore plaintiff's burden to demonstrate that there is a material issue of fact as to whether (1) defendant's asserted reason for discharge is false or unworthy of belief and (2) "more likely than not," plaintiff's race and gender were the real reasons for the discharge. *See Faldetta v. Lockheed Martin Corp.*, 2000 WL 1682759, at *8 (S.D.N.Y. Nov. 9, 2000). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors," including: (1) "the strength of the plaintiff's prima facie case"; (2) "the

14

probative value of the proof that the employer's explanation is false"; and (3) "any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49.

Plaintiff has not provided sufficient evidence to create an issue of fact. To establish pretext, plaintiff points to other employees that she contends are similarly situated but were not disciplined in the same manner. A plaintiff may show pretext by demonstrating that similarly situated employees of a different race were treated more favorably. *Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 839 (2d Cir. 1996). "[The] plaintiff must compare herself to employees who are similarly situated in all material respects." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (internal quotation omitted). "What constitutes 'all material respects' . . . varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Ultimately, "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.*

Plaintiff has provided several comparators, none of whom are sufficient to demonstrate pretext. The comparators do not have disciplinary histories nearly as long or as severe as plaintiff's, which is demonstrated by the fact that most have not had to sign a Last Chance Agreement. *See, e.g.*, *Paladino v. DHL Express (USA), Inc.*, 2010 WL 1257786, at *11 (E.D.N.Y. Mar. 26, 2010) ("[I]t cannot be said that these employees, who were not on a last chance agreement, were similarly situated to Plaintiff."); *McKinney v. Bennet*, 2009 WL

2981922, at *7 (S.D.N.Y. Sept. 16, 2009) (plaintiff was not similarly situated where the comparators did not have a comparable disciplinary history); *Jeunes v. Potter*, 2009 WL 2883060, 9 (D. Conn. Sept. 3, 2009) (plaintiff "had several disciplinary actions against him and termination of employment was the next step in his progressive discipline"); *Guerrero v. Conn. Dept. of Children and Families*, 315 F. Supp. 2d 202, 210 (D. Conn. 2004) (holding that plaintiff "is dissimilar from the comparator based on the fact that his disciplinary record is far worse than that of the comparator").[6]

Apparently acknowledging that the comparators were not subject to a Last Chance Agreement, plaintiff cites to these individuals as examples of isolated instances where an employee received a different discipline than she did for a similar violation. (Pl. Br. 8-13.) However, isolated incidents are insufficient to show that plaintiff's termination was on the basis of discrimination, especially considering that plaintiff's disciplinary history is far worse than that of the comparators. *See, e.g.*, *D'Cunha v. New York Hosp. Med. Ctr. of Queens*, 2006 WL 544470, at *7 (E.D.N.Y. Mar. 6, 2006) (differing treatment was justified where the comparator had no prior disciplinary history); *Padilla v. Harris*, 285 F. Supp. 2d 263, 270 (D. Conn. 2003) ("Prior disciplinary problems may be sufficient to justify differential treatment of otherwise similarly situated employees."); *see also O'Neal v. State Univ. of New York*, 2006 WL 3246935, at *11 (E.D.N.Y. Nov. 8, 2006) (minor instances of differing treatment are insufficient and the focus should be on "employees that have similar qualifications, display similar disciplinary records or committed similar insubordinate acts"). Therefore, the comparators who do not have a long history of disciplinary violations and who have not been subjected to a Last Chance Agreement are not sufficiently similar to plaintiff. Moreover, these comparators' discipline

---

[6] As described above, plaintiff cannot now complain that the imposition of the Last Chance Agreement was discriminatory because that claim is time barred.

progressed in a similar manner as plaintiff's and thus cannot be used to demonstrate disparate treatment. *See, e.g.*, *Martin-Glave v. Aventis Pharm.*, 2007 WL 81913, at \*11 (D. Conn. Jan. 8, 2007) (no disparate treatment where a similarly situated employee was treated in the same manner as plaintiff); *Satterfield v. United Parcel Serv., Inc*., 2003 WL 22251314, at \*10 n.11 (S.D.N.Y. Sept. 30, 2003).

Only one of the comparators—V.L., a Caucasian male who plaintiff argues was "most similarly situated" to her—had signed a Last Chance Agreement. In February 2007, V.L. received a letter of caution for routing trains out of order. His blood was tested shortly after the incident, and he was charged with a violation of the corporate alcohol and substance abuse policy. He signed a trial waiver and Last Chance Agreement, pursuant to which he was suspended for nine months. In March 2008, he received a letter of caution for violating Rule 812 for incorrectly routing a train.[7] Plaintiff argues that V.L. is similarly situated to plaintiff and committed a violation of Rule 812, which was *one of* the rules plaintiff broke when she was terminated, and yet he was not terminated.

Plaintiff cites *Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) to support her contention that V.L.'s treatment demonstrates pretext. In *Graham*, plaintiff, an African-American male, was found guilty of drug use, and as a result, was given a last chance agreement.

---

[7] Plaintiff also alleges that V.L. misrouted another train after he signed the Last Chance Agreement. Although Joseph Navarro testified that V.L. committed a misroute while working as a PSCC console operator, he did not remember when it occurred. Plaintiff alleges that it "necessarily would have been after the first one," yet she provides neither evidence nor any explanation for why that would be the case. (Pl. Br. 17.) Plaintiff's only basis is that Mr. Navarro testified that V.L. was transferred to PSCC after his Last Chance Agreement. (Pl. Br. 12 (citing McIntyre Decl. Ex. 15, at 152).) However, the deposition testimony does not support that contention. Defendant disputes this charge and argues that the misroute occurred before V.L. was subjected to the Last Chance Agreement. However, defendant cites to "McC. Dec., II, Ex. B" to support this contention, and there is no exhibit B attached to the second McCaffrey Declaration. Nevertheless, drawing all inferences in favor of plaintiff, there is no basis to show that this misroute occurred after the Last Chance Agreement.

*Id.* at 37. Two months later, he tested positive for drugs and was terminated. *Id.* Plaintiff submitted evidence that two white employees also tested positive for drugs or alcohol and received multiple last chance waivers while plaintiff was fired after being given only one. *Id.* at 41. The court held that on the face of the waivers, dismissal followed automatically from a violation of the last chance agreement and plaintiff's evidence therefore established a question of fact regarding whether the employees were similarly situated. *Id.* at 43.

Although the facts of *Graham* share some similarities with the facts here, the case is different in several material respects. First, V.L.'s and plaintiff's Last Chance Agreements are not the same. V.L.'s agreement was implemented after only one incident involving a violation of the Corporate Alcohol and Substance Abuse Policy, and focused on discipline based on this drug use. For example, it stated that he had to submit to an Employee Assistance program, he "may be subject to dismissal" if he is found guilty of testing positive for the presence of alcohol and/or drugs, he will be subject to follow-up testing, and he may be dismissed if found guilty of any other disciplinary offense. (McIntyre Decl. Ex. 9.) However, plaintiff received her agreement after a long history of violations, and the agreement was implemented after she violated *several* operating rules for failing to properly relay appropriate notifications, using a cell phone, and leaving work without permission. Her agreement focused on these offenses and stated only that if she is found guilty of any similar offenses, she "may be subject to dismissal." (McIntyre Decl. Ex. 1.) In *Graham*, in contrast, the court noted that the comparators had been given last chance waivers listing the same conditions mandating dismissal, and the language stipulating dismissal for a violation was categorical. *Graham*, 230 F.3d at 43.

Second, V.L. and plaintiff engaged in different conduct. Plaintiff misrouted a train in violation of Rule 812, one of the rules that formed the basis of her last chance agreement. She

also improperly removed a blocking device in violation of another operating rule, and plaintiff does not dispute that this violation is more serious than other violations. (*See supra* Part I.B.) In comparison, V.L. only misrouted a train in violation of Rule 812. Therefore V.L. and plaintiff did not engage in conduct of comparable seriousness. *See, e.g.*, *Jenkins v. St. Luke's-Roosevelt Hosp. Center*, 2009 WL 3682458, at *8 (S.D.N.Y. Oct. 29, 2009) (comparator not similarly situated where he did not engage in "all of the same misconduct"); *Tomasino v. Mount Sinai Med. Ctr. & Hosp.*, 2003 WL 1193726, at *8 (S.D.N.Y. Mar.13, 2003) (comparators were not similarly-situated in all material respects where none committed the most serious of the infractions for which defendant was terminated).

Third, even if plaintiff and V.L. were similarly situated, they were treated similarly. After plaintiff signed the Last Chance Agreement, her supervisors gave her a verbal warning for improperly routing two trains. They also gave her a verbal warning for a separate incident where plaintiff improperly routed two trains. It was only after plaintiff committed yet another misroute and failed to properly remove a blocking device, in violation of two operating rules, that she was terminated. The fact that defendant did not terminate V.L. after he misrouted a train in violation of only one operating rule, and gave him only a letter of caution, demonstrates similar treatment. *See, e.g.*, *Martin-Glave*, 2007 WL 81913, at *11; *Satterfield*, 2003 WL 22251314, at *10 n.11. Therefore, no reasonable jury could conclude that plaintiff was treated differently than V.L.

In sum, plaintiff fails to demonstrate that defendant's asserted reason for discharge is false or unworthy of belief and that it is more likely than not that plaintiff's race and gender were the real reasons for her discharge.

2.      The Arbitration Decision is Further Evidence of Lack of an Inference of Discrimination

Plaintiff's contention that her termination was the result of discrimination is further undermined by the fact that defendant's decision to terminate plaintiff was also the subject of an arbitration proceeding where the arbitrator held that plaintiff's termination was justified. Although the arbitration decision is not inherently conclusive, it is relevant evidence of a lack of discriminatory intent. "Where an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 115 (2d Cir. 2002). "[A] negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee. However, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link." *Id.* at 119 (citation omitted). Therefore, to survive a motion for summary judgment, a Title VII plaintiff alleging discriminatory termination that is upheld after arbitration must present "strong evidence that the [arbitrator's] decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised." *Id.*

Here, plaintiff's termination was upheld unanimously by the PLB. The PLB noted that plaintiff had admitted to violating the Operational Rules, and that dismissal was appropriate. Moreover, the PLB noted that plaintiff failed to present any proof that she was coerced into signing the Last Chance Agreement, and that "she was extremely fortunate that [her union] was able to convince [the defendant] to offer her a Last Chance Agreement in view of her poor work history." (McCaffrey Decl. Ex. QQ.) At the proceedings before the PLB, plaintiff was

represented by union officials, and she was able to submit evidence and present arguments in her defense.[8]

Plaintiff admits that the arbitration was not biased. (Pl. Br. at 18.) Plaintiff contends, however, that the arbitration decision is wrong as a matter of fact because it did not consider any evidence of discrimination. (*Id.*) Plaintiff's argument has been rejected by courts in this Circuit. *See Gallimore-Wright v. Long Island R.R.*, 354 F. Supp. 2d 478, 491-92 (S.D.N.Y. 2005); *Simpson v. New York State Dept. of Civil Serv.*, 2005 WL 545349, at *16 (N.D.N.Y. Mar. 1, 2005) ("Under *Collins* and its progeny, failure to address the discrimination issue in an arbitration does not diminish the impact of that arbitration on a subsequent discrimination action." (citations omitted)), *aff'd*, 166 Fed. Appx. 499 (2d Cir. 2006); *Robinson v. Getinge/Castle, Inc.*, 2005 WL 272964, at *8 (W.D.N.Y. Feb. 2, 2005) (citing additional cases and stating that courts within this Circuit have repeatedly rejected the argument that an arbitrator's decision should not be credited simply because the issues of discrimination and retaliation were not before the arbitrator); *Davis v. O-At-Ka Milk Products Coop., Inc*., 2004 WL 2980757, at *4 (W.D.N.Y. Dec. 22, 2004); *Roemer v. Board of Ed*., 290 F. Supp. 2d 329, 334 (E.D.N.Y. 1999), *aff'd*, 150 Fed. Appx. 38 (2d Cir. 2005).

Indeed, the court in *Gallimore-Wright* stated:

> There is no suggestion in *Collins* that the plaintiff had presented his evidence of discriminatory or retaliatory intent to the arbitrator. Certainly the Circuit did not rely on any findings by the arbitrator with respect to any such claims. And this makes good sense in light of what the Circuit did say. Its point was that the arbitration decision finding that the plaintiff . . . was properly terminated was strong evidence of a lack of retaliatory or discriminatory intent which, in the absence of any meaningful proof to the contrary, prevented the plaintiff from making out a prima facie case.

354 F. Supp. 2d at 492-93.

---

[8] Notably, plaintiff chose not to raise or submit any evidence in support of her contention that she was subjected to discrimination.

Therefore, the fact that the arbitrator did not hear plaintiff's discrimination claims does not discount the arbitrator's findings. Although plaintiff's conduct justifying termination was arguably not as egregious as that in *Collins*—where the plaintiff had committed an assault—that fact does not make the arbitrator's decision here wholly immaterial, especially considering that plaintiff has admitted to all of the suspensions and disciplinary actions that the arbitrator objectively found justified plaintiff's termination. *See Edwards v. Metro-North Commuter R. Co.*, 463 F. Supp. 2d 279, 285 (D. Conn. 2006) ("Plaintiff also seeks to distinguish *Collins* factually on the basis that *Collins* involved a plaintiff who had assaulted his supervisor, but the import of *Collins* is not premised on the nature of the employee's conduct, but rather on the fact of a decision by a neutral arbiter supported by substantial evidence that is adverse to the plaintiff."). Additionally, the reasons for termination in some of the cases citing *Collins* are similar to the bases here and involve a failure to perform adequately, rather than a single egregious incident. *See, e.g.*, *Simpson*, 2005 WL 545349, at *3-7 (plaintiff terminated for accessing confidential information after several disciplinary actions); *Roemer*, 290 F. Supp. 2d at 332-33 (plaintiff terminated for various failings as a teacher). Notably, plaintiff's performance complaints concerned actions that potentially jeopardized the safety of passengers on the trains she improperly routed.

The only cases cited by plaintiff to support her contention that the arbitration decision was wrong as a matter of law are *Petrovis v. New York City Transit Auth.*, 2003 WL 22349676, at *4 (S.D.N.Y Oct. 15, 2003) and *Morel v. Am. Building Maint. Co.*, 124 Fed. Appx. 671, 672 (2d Cir. 2005). First, to the extent that *Petrovis*, which is merely persuasive and not controlling, holds that an arbitrator's decision is not given weight when the arbitrator is not presented evidence of discrimination, the decision is contrary to many other decisions in the Second

Circuit. Moreover, unlike *Petrovis*, where the plaintiff had been denied a promotion, the facts of this case are more similar to those in cases like *Collins*, *Simpson*, *Gallimore-Wright*, and *Robinson*, in which the employee had been terminated, the arbitrator reviewed the evidence supporting the termination, and the court accorded the arbitration decision "great weight." *See Collins*, 305 F.3d at 115; *Simpson*, 2005 WL 545349, at *16; *Gallimore-Wright*, 354 F. Supp. 2d at 491-92; *Robinson*, 2005 WL 272964, at *8. Additionally, contrary to *Morel*, where the court held that an arbitration decision cannot be given preclusive effect, as discussed above, the evidence here has been weighed to determine whether plaintiff has raised an issue of fact.

Accordingly, considering all of the evidence in the record and granting plaintiff all of the inferences to which she is entitled, the court finds that plaintiff has failed to meet her burden in adducing sufficient evidence to support a jury finding that plaintiff was terminated for discriminatory reasons. Defendant's motion for summary judgment therefore is granted as to plaintiff's race and gender discrimination claims.

     D.     <u>Title VII and Section 1981 Retaliation</u>

Plaintiff also alleges retaliation pursuant to Title VII and Section 1981 for making an internal complaint of discrimination in December 2006 and for filing the EEOC complaint on May 9, 2007. Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a).

Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting test described above. *See Coffey v. Dobbs Intern. Servs., Inc.*, 170 F.3d 323, 326 (2d Cir. 1999). To establish a prima facie case of retaliation, plaintiff must show "[1] participation

in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2008) (citation and quotation marks omitted). "The elements required to make out a claim of retaliatory discharge under 42 U.S.C. § 1981 are the same as those required to make out such a claim under Title VII." *Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir. 1988). *See also Berry v. Empire Homes Servs. LLC*, 2010 WL 1037948, at *13 (E.D.N.Y. Mar. 18, 2010).

1. <u>Plaintiff Has Failed to Establish a Prima Facie Case With Regard to the December 2006 Internal Complaint</u>

Plaintiff argues that, in January 2007, defendant disciplined her in retaliation for making an internal complaint in December 2006 regarding comments made to her by Rob Free. As described above, on December 27, 2006, Rob Free broadcasted requests over a line audible to console operators. When plaintiff did not implement the requests, Mr. Free stated "You guys are going to regret it when I come up there, I'll say that much, man. You guys are in for a rude awakening." (Def. 56.1 Stmt. ¶ 71; Pl. 56.1 Stmt. ¶ 71.) Plaintiff wrote a letter of complaint, dated December 28, 2006, with regard to Mr. Free's comments, alleging that the comments were directed at her and were inappropriate and that they created a hostile work environment. Plaintiff's letter did not state that she felt that she was being discriminated against on the basis of gender or race; rather, it stated merely that Mr. Free "lack[ed] professionalism" and caused humiliation. (McCaffrey Ex. AA.) On January 3, 2007 and January 10, 2007, plaintiff received trial notices for operational errors. Plaintiff argues that the January 3 and January 10, 2007 discipline was the result of her December 28, 2006 complaint.

Defendant contends that plaintiff has failed to show a protected activity or an adverse employment action. Specifically, defendant argues that the December 28, 2006 complaint

contains no allegations of racial or gender discrimination and therefore does not constitute a protected activity of which the defendant was aware. Plaintiff responds that it was clear that the complaint was about race and gender because "plaintiff was an African-American woman complaint about behavior of a Caucasian man." (Pl. Br. 23.) However, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). The mere fact that the person or people "making the complaints [were] African American will not convert an ordinary complaint into a complaint of racial discrimination sufficient to put the employer on notice of such discrimination." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 310 (S.D.N.Y. 2009). Significantly, there is no reference to race or to female gender in the statements by Mr. Free that plaintiff complains of. Nor were his statements directed to any one particular person in any discernable way. Because the statements displayed no obvious reference to race or gender and plaintiff's letter addressed harassment generally, but did not mention gender or race discrimination or harassment, there is no reason to impute to defendant any consciousness of an unstated race or gender premise underlying the harassing conduct described. *See Inganamorte v. Cablevision Sys. Corp.*, 2006 WL 2711604, at *16 (E.D.N.Y. Sept. 21, 2006) (defendant could not have been aware of plaintiff's complaint of gender discrimination because the complaint failed to state or imply that "gender has anything to do with her objections"); *Bengard v. United Parcel Serv.*, 2001 WL 1328551, at *9 (E.D.N.Y. Aug. 22, 2001) (where a letter that mentioned being "humiliated, harassed, threatened and manipulated by someone with authority" but failed to reference any

religious basis for the harassment, there was no reason to impute to defendant a "consciousness of an unstated religious premise underlying the harassing conduct described in the letter").

Plaintiff also argues that an "official of the defendant told plaintiff that she could go to Diversity Management," and this "shows a recognition . . . that discrimination was implemented."  (Pl. Br. 23 (citing Rommage Decl. ¶ 22).)  However, plaintiff's declaration does not support this assertion because it does not make any reference to anyone informing plaintiff she could go to Diversity Management.  (*See* Rommage Decl. ¶ 22.)  Moreover, plaintiff did not notify Diversity Management of her complaint until on January 11, 2007, which is after she had received the allegedly retaliatory discipline. (*See* Def.'s 56.1 Stmt. ¶ 134; Pl.'s 56.1 Stmt. ¶ 134.) Therefore, the discipline could not have been in retaliation because it was imposed before defendant was aware that plaintiff's complaints were on the basis of race and gender.

Additionally, plaintiff has failed to allege an adverse employment action because she was reinstated with back pay.  *See, e.g.*, *Almonte v. Coca-Cola Bottling Co.*, 959 F. Supp. 569, 572-73 (D. Conn. 1997) (no adverse action where reinstated with back pay); *see also Washington v. County of Rockland*, 211 F. Supp. 2d 507, 514 (S.D.N.Y.  2002).  Finally, as with plaintiff's claim of discrimination, the decision by the arbitrator "is highly probative of the absence of discriminatory intent" and "will attenuate a plaintiff's proof of the requisite causal link" between the termination and the protected activity.  *Collins*, 305 F.3d at 119; *Gallimore*, 354 F. Supp. 2d at 490-91.  In sum, plaintiff has failed to establish a prima facie case of retaliation with regard to her internal complaint.

2.  Plaintiff Has Failed to Establish a Prima Facie Case With Regard to the May 9,
    2007 EEOC Complaint

Plaintiff also fails to demonstrate a prima facie case with regard to the May 9, 2007 EEOC complaint. Plaintiff alleges that defendant terminated her in October 2007 in retaliation for filing an EEOC complaint in May 2007.

Defendant argues that a five-month period is insufficient to establish a causal connection between the complaint and the adverse employment action. A "causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). However, "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Cunningham v. Consolidated Edison Inc.*, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, (2001) (internal quotation marks omitted)).

Defendant is correct that the five-month period is insufficient to demonstrate a causal connection. *See, e.g.*, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (period of three and a half months was insufficient); *Garrett v. Garden City Hotel, Inc.*, 2007 WL 1174891 at *20-21 (E.D.N.Y. Apr. 19, 2007) (two and one-half months in between plaintiff's "most recent complaint of racial discrimination" and her discharge "preclude[d] a finding of a causal connection between the protected activity and the adverse employment action."); *Cobian v. New York City*, 2000 WL 1782744, at *18 (S.D.N.Y. Dec. 6, 2000) (holding that, standing alone, a four-month gap was insufficient), *aff'd* 23 Fed. Appx. 82 (2d Cir. 2001).

Plaintiff also relies on the same evidence used to support her discrimination claim, which is rejected for the reasons discussed above. Finally, as noted above, the decision by the arbitrator "is highly probative of the absence of discriminatory intent" and "will attenuate a plaintiff's proof of the requisite causal link" between the termination and the protected activity. *Collins*, 305 F.3d at 119; *Gallimore*, 354 F. Supp. 2d at 490-91. Therefore, plaintiff has failed to establish a prima facie case of retaliation with regard to her EEOC complaint.

E.    New York State Claims

Plaintiff also alleges race, gender and age discrimination, as well as retaliation, pursuant to the New York City Administrative Code. Claims pursuant to the New York City Administrative Code are analyzed under the same standards used for Title VII claims. *See Dixon v. City of New York*, 2008 WL 4453201, at *10 n.6 (E.D.N.Y. Sept. 30, 2008) (claims for retaliation brought pursuant to New York City Administrative Code § 8-107(7) are governed by substantially the same burdens and standards as those employed in the Title VII context); *Hurd v. New York Health & Hosps. Corp.*, 2007 WL 678403, at *11 (S.D.N.Y. Mar. 5, 2007) ("On a motion for summary judgment, employment discrimination claims brought under Title VII, 42 U.S.C. § 1981, the ADEA, and New York State and City statutes are analyzed under identical standards.").

As described above, plaintiff has failed to establish that her dismissal was the result of race or gender discrimination. Plaintiff has also failed to establish a prima facie case of retaliation. Additionally, plaintiff has put forth no evidence of age discrimination. Accordingly, defendant is granted summary judgment on these claims as well.

Even if such a dismissal were inappropriate, the court would decline to exercise supplemental jurisdiction over the New York claims in the absence of their federal counterpart.

*See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 55 (2d Cir. 2004) (citations omitted) ("Our Court has held, as a general proposition, that if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

### Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is granted and the complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2010

/s/
_____
DORA L. IRIZARRY
United States District Judge